STARLIGHT FABRICS, INC., Appellant, v. GLENS FALLS INSURANCE COMPANY, Respondent.

Supreme Court, Appellate Term, First Department, May 22, 1947.

*Morris Fish* for appellant.

*Gregory S. Rivkins* and *James J. Donovan, Jr.*, for respondent.

SHIENTAG, J. Plaintiff brought this action upon an insurance policy issued by the defendant to recover the value of five cartons · and one package of merchandise belonging to the plaintiff, which goods were allegedly stolen while in transit. The case comes for consideration on an agreed statement of facts. It appears that on . March 30, 1943, the plaintiff called A. Towle Express Co. to pick up for transportation a shipment consisting of five cartons and one package of fabrics consigned to International Fabrics Corp. at Boston, Mass. The carrier having failed to appear the same day, the call was repeated the following morning and the plaintiff's shipping clerk, Leo Fluhr, was assured by said carrier that a man would call at their place shortly to pick up the merchandise.

About 11 A. M., a man called and inquired " Have you got anything for Towles? " The shipping clerk then instructed the delivery boy, Sidney Blasberg, who had just returned from another delivery, to take the merchandise downstairs to the truck. Sidney Blasberg took the merchandise from the plaintiff's premises and brought them down to the truck. The truckman sent him back to plaintiff's premises for some more goods and when Blasberg was told that his original delivery represented all of the merchandise, he immediately ran downstairs where the truckman was awaiting him.

Blasberg asked for a receipt from the truckman who suggested that they go to the freight entrance where he proceeded to write a receipt on a plain sheet of paper. This was unaccept-

able to plaintiff's delivery boy, who insisted on a regular form carrier's bill of lading. The truckman suggested that he go outside to find another truckman who would loan him a proper form of receipt. When they got outside, he evaded plaintiff's employee and slipped away. At the same time the truck upon which the merchandise was loaded also disappeared. Neither the merchandise nor the truckman has since been located.

On the facts it is clear that the goods were stolen by trick and device. The question arises whether at the moment the larceny occurred the plaintiff was protected by its policy against the loss. The pertinent portions of the policy read as follows:

" The risk under this insurance to attach from the time the goods and/or merchandise leave the store, warehouse or factory at initial point of shipment and continue thereafter while the said goods and/or merchandise are in due course of transit and at the risk of the Assured in the custody of:

> (c) Public Truckmen, Private Truckmen (including trucks owned and/or operated by and/or for the Assured, and/or Land Transfer and/or Transportation Companies)

until same are delivered at the store, warehouse or factory at destination; including risk while in and/or on docks, wharves, piers, bulkheads, depots, stations and/or platforms, but only while actually in transit in the custody of the Carriers above provided and at the risk of the Assured.

ENDORSEMENT.

January 17, 1943

It is understood and agreed that this insurance, subject to the terms and conditions of the policy, is extended to cover the within described goods and/or merchandise —

* * * * * * *

> (b) while in the custody of Messengers or in Taxi-cabs, Private Passenger Cars and/or Handcarts to an amount not exceeding One Thousand & 00/100 ($1,000.00) Dollars, it is, however, expressly understood and agreed that this coverage is subject to and shall not be deemed additional to the limit of liability in any one casualty.
>
> (c) While on elevators, landing sheds, depots, station platforms, sidings, sidewalks, yards or elsewhere incidental to loading, unloading and/or removal.

and this insurance shall cover accordingly."

While it is conceded that the goods never came into the custody of a bona fide public or private truckman, it is con-

tended that at the the moment of the theft the goods were in the custody of a " messenger " within the meaning of the policy.

The point to be decided is whether the goods were in transit after they had left the premises of the employer and were in the custody of the messenger, Blasberg, to be carried to the street and delivered to the supposed carrier. It is not wholly clear how extensive was the plaintiff's place of business but, in any event, at the time the goods were stolen, they were on the sidewalk, which was a place specifically covered by the policy. If there is any ambiguity in the meaning to be attached to the term " messenger ", it should be resolved in favor of the insured. The majority of the court are of the opinion that Blasberg at the time of the theft was a messenger within the meaning of the policy clause relied on. From the moment the goods left the premises in the hands of the messenger, they were started on their journey for the purpose of delivery to a truckman, whether bona fide or fraudulent. In good faith the insured had started the goods in transit and the defendant is liable for the loss. Since the value of the goods is conceded and only a question of law is raised on admitted facts there is no reason for a further trial.

The judgment should be reversed, with costs, and judgment directed for plaintiff as demanded in the complaint, with interest and costs.

McLAUGHLIN, J., concurs with SHIENTAG, J.; HECHT, J., dissents in the following memorandum: I dissent on the ground that the goods here were not delivered to a messenger for transmission to the buyer. Judgment reversed, etc.